IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER G.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

    Defendant.

Case No. 3:18-cv-02164-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Heather G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1972, plaintiff alleges disability beginning May 26, 2011, due to fibromyalgia, post-traumatic stress disorder, and pain in her shoulders, back, hips, arms, and hands. Tr. 158, 184. On November 29, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 28-60. On March 7, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity from alleged onset date "through her date last insured of June 30, 2016." Tr. 17. At step two, the ALJ determined plaintiff's fibromyalgia, degenerative disc disease, and "right shoulder impairment status post two surgeries" were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) except:

> she could stand and walk for 4 hours and can sit for to 6 hours, could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds, could occasionally balance, stoop, kneel and crouch, could never crawl, could occasionally reach overhead, could frequently reach in all other directions, could frequently handle and finger, and should not have concentrated exposure to extreme temperatures, vibration, pulmonary irritants and hazards.

Tr. 18.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 21. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite her impairments, such as laundry sorter and electronics worker. Tr. 22-23.

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinions of Thomas Gwynn Carver, M.D., Patrick Denard, M.D., Jonathan Hoppert, M.D., and Scott Kitchel, M.D.; (3) neglecting to address the lay opinion of Colleen Cormack, vocational rehabilitation consultant; and (4) failing to account for all of her limitations in the RFC and at step five. Pl.'s Opening Br. 4-19 (doc. 12).

**I.  Plaintiff's Testimony**

Plaintiff asserts the ALJ erred by discrediting her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified she was unable to work since her May 2011 on-the-job injury due to right shoulder, hip, and back pain (especially following her April 2014 motor vehicle accident). Tr. 33-40. Plaintiff also endorsed numbness in her right hand and arm, which made grasping objects and repetitive motions difficult. Tr. 41, 43. Because of her impairments, plaintiff testified that she cannot: unload the dishwasher "without dropping stuff," type or write because her "hand and arm usually will [cramp up or] go numb after a very short period," or "walk a normal gait" due to "stabbing" hip pain. Tr. 34, 36, 43. In addition, plaintiff stated she can only stand for 15 minutes before needing to change position and reclines for 60-70% of the day to take the pressure off her back. Tr. 40, 42. Since her second shoulder surgery in April 2013, plaintiff explained that she naps during the day for approximately two hours. Tr. 47-48.

In terms of daily activities, plaintiff stated: "I don't do a whole lot. I'm at the house by myself." Tr. 35. Namely, plaintiff indicated that she might drive once or twice per week to grocery shop, do one load of laundry per day with breaks, and/or pick up the house but not "all in one shot." Tr. 33-36. Plaintiff denied any medication side-effects; however, she noticed "quite a bit of difference in [her] pain level" due to the recent taper of her narcotic medications. Tr. 45.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but

her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18-21. Specifically, the ALJ cited to plaintiff's daily activities and treatment record. Id.

Concerning the latter, the ALJ determined the medical record reflected that plaintiff's "pain was well-controlled" with medication. Tr. 21. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration. Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). Similarly, failure to report allegedly disabling symptoms to treatment providers is a valid reason to discount a claimant's self-reports. Greger v. Barnhart, 464 F3d 968, 972-73 (9th Cir. 2006).

Here, the record is replete with evidence indicating plaintiff's pain symptoms were not as extreme as alleged. For instance, plaintiff repeatedly indicated that her pain medications were effective. See Tr. 650 (plaintiff's "pain is well controlled on her accommodation of OxyContin and oxycodone" as of September 2015), 665 (plaintiff reporting in January 2015 that she "can ignore [her pain] most of the time" but then "left [the appointment] abruptly" at the suggestion she taper off her narcotic medications), 701 (plaintiff's "current medication seems to work well" as of January 2014), 730-31 (plaintiff's "pain [is] well controlled on present medication" as of February 2013), 736 (plaintiff's "[p]ain is well controlled on present pain medications" as of July 2011); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("[i]mpairments that can be controlled effectively with medication are not disabling").

Relatedly, plaintiff consistently reported "mild" pain levels while using her medications – i.e., a 1-to-2 out of 10, with 10 being the worst pain imaginable; exacerbations of her conditions typically resulted in "moderate" pain, generally rated at 4-to-5 out of 10. See, e.g., Tr. 326, 346,

431, 457, 491, 497, 507, 515, 521, 539, 541, 551, 611. Numerous providers likewise observed plaintiff to walk with a normal gait and plaintiff never reported severe or "stabbing" pain in association therewith.

Furthermore, the ALJ found that plaintiff's activities undermined her subjective symptom statements. An ALJ may discredit a claimant's testimony when he or she reports activities that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted).

Substantial evidence supports the ALJ's finding in the case at bar. As the ALJ denoted, plaintiff reported activities to her providers that were in excess of her testimony at the hearing. The record reflects that, during the adjudication period, plaintiff: engaged in moderate to strenuous exercise for at least 30 minutes, multiple times per week, on the elliptical machine or by walking; attended church and socialized with friends and family; travelled for extended distances by plane and car; and participated in limited household chores, such as chopping vegetables, laundry, dishes, cleaning, etc. See, e.g., Tr. 211, 347, 519, 533, 535, 537, 615-19, 641, 650, 654, 659, 683, 685-86, 701-02, 711, 716, 720, 726-27; see also Khal v. Colvin, 2015 WL 5092586, *4 (D. Or. Aug. 27, 2015), aff'd, 690 Fed.Appx. 499 (9th Cir. 2017) (affirming the ALJ's credibility finding on the basis that the claimant's hearing statements – i.e., "that he has no physical or mental activity or recreation and could only sit for up to 30 minutes at one time" – were inconsistent with "his ability to travel") (citation and internal quotations and brackets omitted).

Plaintiff's son was also still a minor and living at home at the time of her May 2011 injury; as the at-home parent, plaintiff was presumably his primary caregiver. Tr. 557, 641; see also Tr. 305 (post-injury examination from July 2011 reflecting that plaintiff "has three children, ages 14, 17, and 21" and spends her off-work time "watching her sons play baseball and basketball,

walking, camping, etc."), 347 (workers' compensation evaluation from October 2014 describing plaintiff's hobbies as "[w]atching her son's sporting activities," walking, camping, and reading), 633 (medical report from June 2016 describing plaintiff as "very active, caring for family members"). Based on these activities, it was reasonable for the ALJ to infer that plaintiff retained the ability to perform work consistent with the RFC's standing, walking, sitting, and postural limitations.[2]

Therefore, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of her impairments. The ALJ's evaluation of plaintiff's testimony is affirmed.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the right shoulder restrictions assessed by Drs. Carver, Denard, Hoppert, and Kitchel. The ALJ is responsible for resolving ambiguities in the record and translating the claimant's impairments into concrete functional limitations. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons, supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons, supported by substantial evidence. Id.

---

[2] Plaintiff also challenges the ALJ's treatment of her subjective symptom testimony relating to right hand and arm numbness. Pl.'s Opening Br. 13 (doc. 12). While plaintiff is correct that the ALJ incorrectly indicated that these symptoms occurred only when sleeping, the record does not contain any relevant underlying diagnosis from within the adjudication period. Critically, the ALJ determined plaintiff's fibromyalgia, degenerative disc disease, and right shoulder impairment were medically determinable and severe, and plaintiff does not challenge the ALJ's step two finding on appeal. In any event, as the ALJ found, plaintiff's self-reported hand and arm limitations are inconsistent with her demonstrated abilities during the February 2014 Work Capacity Evaluation.

Page 7 – OPINION AND ORDER

### A. 2011 Opinions from Drs. Carver and Denard

Plaintiff injured her right shoulder at work on May 26, 2011. Tr. 304. Dr. Carver, who initially treated the injury, instructed plaintiff to limit her right arm use to "no reaching away from [her] body" and "no lifting over 10 pounds." Tr. 286-87. On June 29, 2011, due to ongoing pain reports, Dr. Carver directed plaintiff "not to use the right arm" and to follow up in two weeks for reevaluation. Tr. 285.

On July 12, 2011, plaintiff had an independent medical evaluation with Dr. Denard, who found that plaintiff's injury was not "medically stationary." Tr. 304-12. He agreed with Dr. Carver "that if the work at this time is exacerbating her symptoms it is reasonable for her to have no use of the right arm." Tr. 312. Nevertheless, Dr. Denard made clear that "[t]his would be a temporary restriction, in the order of weeks." Id. Thereafter, he indicated that plaintiff would "experience rapid resolution of symptoms and have a full return of range of motion within three to six months." Tr. 311.

The ALJ rejected the opinions of Drs. Carver and Denard because "they were temporary in nature and were provided shortly after her May 2011 injury." Tr. 19. An ALJ may reject temporary opinions that do not reflect a claimant's long-term functioning. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008).

An independent review of the medical record supports the ALJ's conclusion. Dr. Carver provided plaintiff with follow up treatment instructions, implicating that her condition was still in flux. Dr. Denard subsequently confirmed that plaintiff's shoulder was not medically stationary and that she would improve over the following months. Indeed, plaintiff testified at the hearing: "I, obviously, use [my right arm] for laundry, or dishes, or going to the bathroom, taking a shower." Tr. 34. Further, C.T. Woolley, M.D., examined plaintiff in January 2012 and opined that, although

plaintiff was not yet medically stationary, she "could accommodate a desk job light duty now." Tr. 323-24. As such, nothing in the record indicates that plaintiff was wholly unable to use her right arm outside of the immediate periods following her injury and surgeries, such that reversal is not warranted in regard to this issue.

While not dispositive, the Court also notes that plaintiff previously applied for, and was denied, social security disability benefits. Tr. 15, 181. Given the timing of plaintiff's prior claim – i.e., a June 2014 final denial at the initial level – it is possible that the opinions of Drs. Carver and Denard (as well as those of Dr. Hoppert, discussed below) are not properly before the Court. Id.; see also Vincent T. v. Comm's Soc. Sec. Admin., 2019 WL 3774298, *6 (W.D. Wash. Aug. 12, 2019) (res judicata principles ordinarily dictate that the earliest date a claimant can be found disabled is the day after a prior final decision denying benefits) (citing Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); and Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985)).

### B.     2013 and 2014 Opinions from Drs. Hoppert and Kitchel

In March 2012, Jonathan Greenleaf, M.D., performed surgery on plaintiff's right shoulder. Tr. 423-24, 475-77. Thereafter, plaintiff saw Dr. Greenleaf approximately every four-to-six weeks for post-operative care. Tr. 426-443. Plaintiff was initially doing well, "making reasonable progress" with "no evidence of any complications." Tr. 426-29. Accordingly, Dr. Greenleaf released plaintiff to "light duty work" with progressively increasing lifting and use restrictions. Tr. 427-32. By September 2012, Dr. Greenleaf stated plaintiff "may lift up to 15 pounds with no repetitive use of the right shoulder beyond 2 hours per day." Tr. 433-34. However, in January 2013, plaintiff reported "[c]ontinued right anterior shoulder pain in spite of therapy and injections." Tr. 440.

On February 18, 2013, Dr. Hoppert conducted an independent medical evaluation related to plaintiff's workers' compensation claim. Tr. 325-34. Pursuant to that evaluation, Dr. Hoppert reviewed relevant medical records and interviewed and examined plaintiff. Tr. 325-31. The doctor opined that plaintiff was not medically stationary and in need of an additional surgery. Tr. 333. Dr. Hoppert nonetheless "anticipate[d] a medically stationary status at four months after her shoulder procedure [with] some mild degree of impairment." Id.; see also Tr. 334 ("it is probable [plaintiff] will experience a decrease in her medical difficulties after the recommended procedure"). In the interim, Dr. Hoppert found that a "10-pound lift limit" was "appropriate." Tr. 334.

In April 2013, Dr. Greenleaf performed a second surgery on plaintiff's right shoulder. Tr. 443-47, 478-81. Post-operatively, Dr. Greenleaf indicated plaintiff was making "[s]low but reasonable progress" with ongoing mild-to-moderate pain. Tr. 448-58. By mid-March 2014, it was noted that plaintiff "seems to have plateaued [over the past two months] with regards to her physical therapy" and was therefore referred for "a physical capacities exam." Tr. 459-61.

On March 31, 2014, Dr. Hoppert re-examined plaintiff. Tr. 356-65. Dr. Hoppert again found that plaintiff was "not yet medically stationary" and "needs treatment." Tr. 363-64. Although he did not assess any work restrictions, Dr. Hoppert denoted that the Work Capacity Evaluation ("WCE"), performed in February 2014 by physical therapist Elyse Berkovitch, "quite definitely outlines that [plaintiff] should do no repetitive lifting with the right arm, only occasional lifting of a 10 pound limit, and no overhead work." Tr. 364; see also Tr. 336-41 (February 2014 WCE).

On October 14, 2014, Dr. Kitchel conducted an independent medical examination after plaintiff was deemed medically stationary following her second shoulder surgery. Tr. 345-355.

After reviewing the medical record, including Dr. Greenleaf's chart notes, Dr. Hoppert's assessments, and the WCE, and conducting a physical examination, Dr. Kitchel opined that plaintiff "should permanently be limited to 10 pounds of lifting with the right arm and no use of the right arm above shoulder height." Tr. 354.

The ALJ afforded "some weight" to Dr. Hoppert's 2013 opinion because "evidence does not support a 10-pound lifting limit" given plaintiff's "full motor strength" and the fact that "[t]he opinion was provided shortly prior to her shoulder surgery and does not address her long-term functioning." Tr. 20. The ALJ rejected Dr. Hoppert's 2014 opinion because "it is inconsistent with [plaintiff's] demonstrated abilities at" the WCE. Id. Similarly, the ALJ rejected Dr. Kitchel's opinion because the WCE "supports a finding that [plaintiff] is capable of light exertion lifting and occasional overhead reaching." Id.

While the ALJ's treatment of Dr. Hoppert's 2013 opinion may be supported by legally sufficient reasons and substantial evidence, the ALJ's assessment of Dr. Hoppert's and Dr. Kitchel's 2014 opinions decidedly is not. In fact, nothing in the record undermines Dr. Hoppert's 2014 opinion and subsequent evidence further supports the existence of a ten pound weight restriction, with no right-sided overhead reaching. Significantly, the WCE explicitly delineates that plaintiff was limited to only occasional lifting of ten pounds from waist-to-shoulder.[3] Tr. 339. In June 2014, Dr. Greenleaf reiterated that plaintiff was limited to "no lifting over 10 lbs." Tr. 466.

---

[3] The Commissioner implies that Ms. Berkovitch did not have "an adequate basis on which to form an opinion" regarding plaintiff's lifting abilities because plaintiff's WCE performance was self-limited. Def.'s Resp. Br. 5-6 (doc. 14). Although Ms. Berkovitch expressed that plaintiff's lifting abilities were related to plaintiff's "reported right shoulder pain," Ms. Berkovitch did not indicate, as she did in other portions of the WCE, that she was unable to make a projection due to self-limited behaviors. Tr. 339-40. Indeed, Drs. Hoppert and Kitchel both interpreted Ms. Berkovitch's report as restricting plaintiff to lifting no more than ten pounds occasionally; they also independently examined plaintiff and opined as to similar lifting restrictions, expressly finding that plaintiff's "complaints are consistent" with the objective evidence. Tr. 351, 353, 357, 363-64.

Page 11 – OPINION AND ORDER

As addressed above, Dr. Kitchel permanently restricted plaintiff in October 2014 to lifting/carrying ten pounds on the right side, with no overhead reaching. Critically, Dr. Kitchel's assessment constitutes the most recent functional evaluation from any treating or examining source, and it also represents the only opinion evidence following plaintiff's medically stationary status. Thus, even presuming Dr. Kitchel's lifting and reaching restrictions are plainly inconsistent with the WCE, his opinion would still be entitled to deference given the longitudinal treatment record. See Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("even when contradicted, a treating or examining physician's opinion is still owed deference" such that "an ALJ errs when he rejects a medical opinion [by] asserting without explanation that another medical opinion is more persuasive"); Vega v. Comm'r Soc. Sec. Admin., 2019 WL 3238466, *4 (D. Ariz. July 18, 2019) ("the mere existence of controverting opinions is not a legally sufficient reason to reject the opinion of a treating [or examining] physician").

In sum, the ALJ committed harmful legal error in weighing the 2014 medical opinion evidence from Drs. Hoppert and Kitchel. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2012) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

### III. Lay Opinion Evidence

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources," including rehabilitation counselors, can be used to determine the severity of an impairment and how it affects the claimant's ability to work. SSR 06-03p, available at 2006 WL 2329939. To reject the opinion of an "other source," the ALJ must provide a germane reason supported by substantial evidence. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

On January 26, 2015, Ms. Cormack prepared an "Eligibility Evaluation Assessment" at the request of plaintiff's workers' compensation attorney. Tr. 367. Ms. Cormack reviewed plaintiff's education, employment background, and medical records related to her May 2011 on-the-job-injury; she also conducted a telephone interview with plaintiff and performed a labor market survey. Tr. 367-71. Based on that information, Ms. Cormack opined that plaintiff was limited to sedentary work. Tr. 368. In the "Conclusions and Recommendations" section, Ms. Cormack stated plaintiff "has a substantial handicap to employment" and "does not have the necessary physical capacities, knowledge, skills and abilities to return to work" in the occupations previously identified. Tr. 372-74.

The ALJ's decision wholly neglects to address Ms. Cormack's opinion by name, exhibit, or date. Tr. 15-27. Because Ms. Cormack's opinion is clearly relevant to the issue of whether plaintiff is capable of working, the ALJ was required to discuss it. 20 C.F.R. § 404.1527(f); see also Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ must discuss all relevant and probative evidence). The ALJ's failure to weigh, or even acknowledge, Ms. Cormack's report was error.

## IV.    RFC and Step Five Finding

Finally, plaintiff argues the ALJ's RFC and step five finding are erroneous because they do not adequately account for the limitations described in her testimony,[4] as well as the opinions of Ms. Cormack and Drs. Carver, Denard, Hoppert, and Kitchel.

---

[4] Plaintiff also asserts the ALJ failed to fashion an RFC that adequately accounted for her fibromyalgia, hand numbness, and increased back pain following her April 2014 motor vehicle accident; yet plaintiff's self-reports are the only source of any concrete functional limitations related to these conditions. Pl.'s Opening Br. 18 (doc. 12); see also Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (only limitations supported by substantial evidence must be incorporated into the RFC).

Page 13 – OPINION AND ORDER

This argument is partially well-taken. As discussed herein, the ALJ overlooked Ms. Cormack's opinion and wrongfully rejected the 2014 assessments of Drs. Hoppert and Kitchel. Because the ALJ failed to account for the concrete work-related limitations of function described by these sources in plaintiff's RFC, the ALJ erred in relying upon the VE's testimony at step five. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotation marks omitted); see also 20 C.F.R. § 404.1567(b) (light work entails lifting up to "20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). As a result, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

The question therefore becomes whether further proceedings or the immediate payment of benefits is warranted. This decision lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

In this case, the record is ambiguous regarding the extent of plaintiff's allegedly disabling impairments. On the one hand, plaintiff engaged in activities during the adjudication period that were in excess of her subjective symptom testimony. The WCE similarly suggests that plaintiff's physical capabilities surpassed her self-reported limitations. Moreover, plaintiff consistently

described mild-to-moderate pain levels and symptom management with her then-current medication regime.

On the other hand, plaintiff sought regular treatment, including two surgeries and extended trials of physical therapy, for her pain and continually reported ongoing issues in relation thereto. Further, her medical providers repeatedly restricted her lifting to ten pounds, which is not accounted for in the ALJ's RFC. There is also evidence in the record demonstrating that plaintiff's back impairment worsened over time. See, e.g., Tr. 917-40, 961; see also Daley v. Colvin, 2014 WL 5473797, *9 (D. Or. Oct. 28, 2014) (degenerative disc disease is a condition that, "by definition, progressively worsens over time"). Likewise, plaintiff's imaging studies from the adjudication period reveal both "mild-to-moderate" and "moderate-severe" degenerative changes. Tr. 634-35, 666; see also Dahl v. Comm'r of Soc. Sec., 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) ("[c]ourts have found that mild degenerative disc disease can have disabling effects") (collecting cases). As such, it is unclear from the record if, or when, plaintiff became disabled, especially in light of her prior benefits denial.

Accordingly, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful legal error is to remand for further administrative proceedings). Given the remote date last insured of June 2016, coupled with the numerous and, at times, conflicting medical opinions relating to plaintiff's right shoulder, consultation with a medical expert is appropriate. Upon remand, the ALJ must reconsider the medical evidence, consult with a medical expert, and reformulate plaintiff's RFC and obtain additional VE testimony, if necessary.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 16th day of October, 2019.

                                           /s/ Jolie A. Russo
                                             Jolie A. Russo
                                    United States Magistrate Judge